```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


SOUTHCO, INC.                    : CIVIL ACTION
                                 :
      vs.                        :
                                 : NO. 08-CV-189
REELL PRECISION MANUFACTURING    :
CORPORATION                      :
```

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                **May 27, 2008**

This matter has been brought before the Court on competing motions of the parties to vacate and confirm the arbitration award entered on December 11, 2007. For the reasons which follow, the plaintiff's motion to confirm shall be granted and the defendant's motion to vacate denied.

## Case History[1]

This case arose out of a business alliance between Southco, Inc., a Delaware corporation with its principal place of business in Concordville, Pennsylvania and Reell Precision, a Minnesota corporation. At all times relevant to these proceedings, Southco manufactured and sold a product known as the "DCX Hinge" and for several years Reell had supplied Southco with a component part

---

[1] The instant action is a successor action to a declaratory judgment action previously filed at No. 06-CV-1983 which we dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted via Memorandum and Order dated November 13, 2006.

for the DCX Hinge.[2]  One of Southco's chief customers for the DCX Hinge was a company known as Intier Automotive Interiors which for a number of years had supplied the DCX Hinge to Daimler Chrysler as one of its first tier suppliers.  Daimler-Chrysler in turn used the hinge as part of the fold-down assembly on its third-row passenger seat in several of its mini-van models.

In December, 2002, Southco and Reell first entered into an Alliance Agreement with the understanding that they would be taking advantage of one another's respective strengths - Reell's "patented smooth-feel constant torque technology and Southco's sales and marketing organization."  (Reell Precision Manufacturing Corporation's Arbitration Memorandum and Summary of Expected Testimony, attached as Exhibit "C" to Southco's Response to Reell's Combined Memorandum in Opposition to Southco's Motion to Confirm and Reell's Motion to Vacate Arbitration Award).  The Alliance Agreement was subsequently amended and restated on April 1, 2004.  As we noted at page 2 of our November 13, 2006 Memorandum in the prior action,

> The amended Agreement comprehensively defines Southco and Reell's contractual relationship with respect to various areas of business practice, i.e., marketing and sales, intellectual property, confidentiality, and dispute resolution. ... Specifically, Article IX establishes the

---

[2] As we explained in footnote 1 to our November 13, 2006 Memorandum, "[t]he DCX Hinge is a hinge assembly used to control the angular position of two independent components.  One application for such a hinge would be in laptop computers where the LCD screen folds into the base of the computer.  The hinge employs a friction element to allow a user to position the screen at various angles."

parties' commitment to arbitration to resolve disputes and provides the necessary procedures for the filing and hearing of all claims.

On June 6, 2006, Southco demanded arbitration of a dispute which had arisen out of what Southco contended was Reell's violation of and attempt to terminate the Amended Alliance Agreement by soliciting Southco's customer, Intier to cease its use of Southco's DCX hinge application.  In doing so, Southco invoked Article 9.1 of the Amended Alliance Agreement:

> Any claim, controversy or dispute arising out of or relating to this Agreement or any interpretation or breach thereof or performance under this Agreement, including without limitation any dispute concerning the scope of this arbitration provision, shall be settled exclusively by submission to final, binding and non-appealable arbitration ("Arbitration") for determination, without any right by any Party to a trial de novo in a court of competent jurisdiction, after a 25-calendar day waiting period (the "Waiting Period") subject to Section 9.4.  During the Waiting Period, the Parties shall work reasonably and in good faith and shall use their best efforts to amicably resolve the claim, controversy or dispute.  The Arbitration and all pre-hearing, hearing, post-hearing arbitration procedures, including those for Disclosure and Challenge, shall be conducted in accordance with the Commercial Arbitration Rules (the "Commercial Rules") of the American Arbitration Association (the "Association") in Philadelphia, Pennsylvania, as supplemented by this Agreement.  In addition to the Commercial Rules, the Parties shall also follow the procedures described in this Article X.

Subsequently, arbitration was conducted before a panel of three arbitrators appointed by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules of the AAA over five days in September, 2007 in Philadelphia.  On December 11, 2007, the arbitration panel issued a unanimous

Partial Arbitration Award finding for Southco and against Reell and awarding Southco the sum of $2 million plus Southco's reasonable attorneys' fees and the expenses incurred in the arbitration.  The panel specifically reserved jurisdiction to determine the amount of and subsequently enter a separate award of attorneys' fees and expenses.  It is this award which Southco now seeks to confirm and Reell seeks to vacate in accordance with the relevant provisions of the Federal Arbitration Act, 9 U.S.C. §1, *et. seq.*

## **Discussion**

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16, to overcome judicial resistance to arbitration. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed.2d 1038 (2006).  The FAA thus explicitly permits the use of arbitration and specifically authorizes individuals in commercial transactions to contract for arbitration.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  As the FAA evinces the "liberal federal policy favoring arbitration," the legislation "compels judicial enforcement of a wide range of written arbitration agreements."  Id., quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111, 121 S. Ct. 1302, 149 L. Ed.2d 234 (2001) and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed.2d 765 (1983).

As for jurisdiction over controversies touching arbitration, the Act does nothing, being "something of an anomaly in the field of federal court jurisdiction" in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis. Hall Street Associates, L.L.C. v. Mattel, Inc., ___ U.S. ___, 128 S.Ct. 1396, 1402 (2008), quoting Moses H. Cone, 460 U.S. at 25, n. 32. But in cases falling within a court's jurisdiction, the Act makes contracts to arbitrate, "valid, irrevocable, and enforceable," so long as their subject involves "commerce." Id. Stated otherwise, the Federal Arbitration Act itself does not create federal jurisdiction; rather, an independent basis of jurisdiction is needed such as under 28 U.S.C. §1332 (providing for federal jurisdiction where the citizenships of the parties are diverse). Pfizer, Inc. v. Uprichard, 422 F.3d 124, 128 n. 5 (3d Cir. 2005).

Once a case has been arbitrated, there is a strong presumption under the FAA in favor of enforcing arbitration awards. Brentwood Medical Associates v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005). The FAA also supplies mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. Hall Street, supra. Indeed, Sections 9, 10 and 11 of the FAA provide as follows in pertinent part:

> **§9. Award of arbitrators; confirmation; jurisdiction; procedure**

5

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.  Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

**§10.  Same; vacation; grounds; rehearing**

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration -

   **(1)** where the award was procured by corruption, fraud, or undue means;

   **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

   **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

   **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

**(b)** If an award is vacated, and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

...

**§11.   Same; modification or correction; grounds; order**

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration -

**(a)** Where there was evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

**(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

**(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

An arbitration award is generally presumed valid. Brentwood Medical Associates, supra. Review of arbitration awards is "extremely deferential" and vacatur is appropriate only in the "exceedingly narrow" and exclusive circumstances delineated in Sections 10 and 11. See, Hall Street, 128 S.Ct. at 1403; Sherrock Brothers, Inc. v. Daimler Chrysler Motor Company, LLC, No. 06-4767, 2008 U.S. App. LEXIS 282, at *2-*3 (3d Cir. Jan. 7, 2008) and Parsons Energy and Chemicals Group, Inc. v. Williams Union Boiler, 2005 U.S. App. LEXIS 7131 at *12, 128 Fed. Appx. 920, 925 (3d Cir. April 25, 2005), both citing Dhluhos, 321 F.3d at 370.

Likewise, an arbitrator's "improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce the award."  Metromedia Energy, inc. v. Enserch Energy Services, 409 F.3d 574, 578 (3d Cir. 2005), quoting, *inter alia,* Major League Baseball Players Association v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed.2d 740 (2001).  This is because the Court's role in reviewing the outcome of arbitration proceedings is not to correct factual or legal errors made by an arbitrator and courts should not re-weigh the evidence to decide whether to vacate the award.  Major League Umpires Association v. American League of Professional Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004); Hruban v. Steinman, Civ. A. No. 00-4285, 2001 U.S. Dist. LEXIS 4906 at *6 (E.D. Pa. April 19, 2001).  In other words, the court must focus on the "arbiter and the contract and not on the facts underlying the dispute." City of Reading v. Wheelbrator Water Technology, Inc., Civ. A. No. 97-7799, 1998 U.S. Dist. LEXIS 4234 at *9(E.D. Pa. March 31, 1998), quoting Local Unions 1160 v. Busy Beaver Building Centers, Inc., 616 F.Supp. 812, 813 (W.D. Pa. 1985).

In this case[3], Defendant, Reell Precision moves to vacate the arbitration award on the grounds that the arbitrators exceeded the scope of their authority by implying a contractual

---

[3]  The independent jurisdictional basis here is, of course, diversity jurisdiction pursuant to 28 U.S.C. §1332 as plaintiff is a citizen of Delaware and Pennsylvania and Defendant is a citizen of Minnesota.

non-competition provision and in awarding Southco damages for lost profits as that form of relief was ostensibly foreclosed by the terms of the Alliance Agreement between the parties.  Thus, Reell invokes the exclusion set forth in 9 U.S.C. §10(a)(4) that the arbitrators exceeded their powers.  Stated more specifically, Reell asserts that by issuing a $2 million award in favor of Southco, the arbitrators exceeded the authority ceded to them under Article IX, §9.4 which strictly bound them to base any award on the express terms, conditions and covenants of the Amended Alliance Agreement, §9.5, which prohibited them from in any way altering or modifying those express terms, and in contravention of the Partial Termination Agreement which eliminated all restrictions on competition.  In addition, Reell contends that by effectively awarding lost profits, the arbitrators acted directly contrary to Article VII, §7.5 which says that neither party can be held liable to the other for lost profits resulting from a breach of contract or under any other legal or equitable theory.[4]

---

[4] The Amended and Restated Alliance Agreement's cited provisions read as follows:

> 7.5   Limitation of Liability.  EXCEPT WITH RESPECT TO EITHER PARTY'S INDEMNIFICATION OBLIGATIONS UNDER SECTIONS 7.1(ii) AND 7.2(ii) RESPECTIVELY, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY OTHER PERSON OR ENTITY IN CONNECTION WITH THIS AGREEMENT FOR ANY SPECIAL, CONSEQUENTIAL, INCIDENTAL OR RELIANCE DAMAGES (OR ANY LOSS OF REVENUE, PROFITS OR DATA), HOWEVER CAUSED, WHETHER FOR BREACH OF CONTRACT, NEGLIGENCE OR UNDER ANY OTHER LEGAL THEORY, WHETHER FORESEEABLE OR NOT AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, BOTH PARTIES AGREE THAT THESE


The Third Circuit has set forth the analysis that a district court must undertake when deciding a challenge to an arbitrators' award on the grounds that the arbitrators exceeded their powers. City of Reading, 1998 U.S. Dist. LEXIS at *9-*10.  First, "the court must examine the form of the relief awarded to determine if it is rationally derived either from the agreement between the parties or from the parties' submissions to the arbitrators," and second, the Court must determine whether the terms of the relief are rational..."  Id., quoting Meadows Indemnity Co. v. Arkwright Mutual Insurance Co., Civ. A. No. 88-0600, 1996 U.S. Dist. LEXIS 14318, *10 (E.D. Pa. Sept. 30, 1996) and citing Mutual Fire,

---

LIMITATIONS OF LIABILITY ARE AGREED ALLOCATIONS OF RISK AND ARE REFLECTED IN THE FEES AGREED UPON BY THE PARTIES.

...

9.4   The arbitration panel as designated above shall proceed with the Arbitration by giving written notice to all parties of its proceedings and hearing in accordance with the Association's applicable procedures. Within 15 days after all three arbitrators have been appointed, an initial meeting among the arbitrators and counsel for the Parties shall be held for the purpose of establishing a plan for administration of the Arbitration, including: (i) definition of issues; (ii) scope, timing and type of discovery, which may at the discretion of the arbitrators include production of documents in the possession of the Parties, but may not, without the statements of claims and pre-hearing memoranda; (iv) schedule and place of hearings; and (v) any other matters that may promote the efficient, expeditious and cost-effective conduct of the proceeding.  The arbitrators shall be bound to make specific findings of fact and reach conclusions of law, based upon the submissions and evidence of the Parties, and shall issue a written decision explaining the basis for the decision and award.  The award shall be made within one year of delivery of the Response.

9.5   The Parties agree that the arbitrators shall have no power to alter or modify any express provision of this Agreement or to render any award which, by its terms, effects any such alteration or modification.

Marine & Inland Insurance Co. v. Noard Reinsurance Co., 868 F.2d 52 (3d Cir. 1989) and Swift Industries, Inc. v. Botany Industries, Inc., 466 F.2d 1125, 1131 (3d Cir. 1972).  As to the terms of the award, a court must affirm the award unless they are completely irrational; and thus so long as an arbitration award "draws its essence" from the agreement [to arbitrate] it must be upheld because the parties to the agreement bargained for a procedure in which an arbitrator would interpret the agreement. Sherrock Brothers, Inc. v. Daimler Chrysler Motors Company, 465 F. Supp.2d 384, 392-393 (M.D. Pa. 2006).  For an award to be "completely irrational," it is not enough that a court find that the arbitrators erred, but rather it must find that their decision indeed escaped the bounds of rationality.  Clarendon National Insurance Co. v. NCO Financial Systems, Inc., Civ. A. No. 03-69, 2004 U.S. Dist. LEXIS 7098 at *7 (E.D. Pa. April 8, 2004).  In considering the arbitrator's interpretation of the contract, the question becomes whether "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention."  Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1295 (3d Cir. 1996).

It has also been said that an arbitrator exceeds his authority only if he rules on questions or matters not before him.  Simply reaching a particular result based on his view of

Case 2:08-cv-00189-JCJ   Document 23   Filed 05/28/08   Page 12 of 14

the contract and the evidence submitted, even if the court might reach a different result from that same evidence, does not mean that the arbitrator exceeded his authority.  National Clearing Corp. v. Treff, Civ. A. No. 04-4765, 2005 U.S. Dist. LEXIS 415, *10 (E.D. Pa. Jan. 10, 2005), citing Coltec Industries, Inc. v. Elliot Turbocharger Group, Inc., Civ. A. No. 99-1400, 1999 U.S. Dist. LEXIS 13684, *15 (E.D. Pa. Sept. 9, 1999).

Although Reell bases its motion to vacate under the guise that the arbitrators exceeded their powers, it appears that the said motion is in reality a challenge to the arbitrators' factual and legal determinations (1) that Reell misunderstood the limitations on its obligations under the Amended Agreement and Partial Termination Agreement and thus mistakenly believed that it could solicit Intier directly thereby violating the implied duty of good faith and fair dealing inherent to all contracts under Pennsylvania law, and (2) that the limitation of liability language contained in Article VII, §7.5 applied only to claims for indemnification, and not to all claims as Reell urged.

Frankly, after reviewing the panel's decision in conjunction with the parties' agreements and their pre-arbitration submissions, we find the decision to be well-reasoned, appropriately derived from both the written agreements and the parties' arbitration memoranda, and well within the bounds of rationality.  Indeed, it appears to this Court that the

12

arbitrators properly performed their obligations to interpret the parties' agreements and the mere fact that they did not adopt the interpretation which Defendant urged upon them does **not** equate to overstepping their authority.  As the authorities cited above reflect, it also most certainly does not constitute grounds for overturning the arbitrators' award.  For these reasons, Southco's motion to confirm the arbitration award of December 7, 2007 must be granted while Reell's motion to vacate must be denied.

    An order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
SOUTHCO, INC.                    : CIVIL ACTION
                                 :
     vs.                         :
                                 : NO. 08-CV-189
REELL PRECISION MANUFACTURING    :
CORPORATION                      :
```

**ORDER**

AND NOW, this 27th day of May, 2008, upon consideration of the Plaintiff's Motion in the Nature of a Petition to Confirm Partial Arbitration Award (Docket No. 2) and the Defendant's cross Motion to Vacate Partial Arbitration Award (Docket No. 16), it is hereby ORDERED that the Plaintiff's Motion is GRANTED, the Defendant's Motion is DENIED and the Partial Arbitration Award entered by the AAA panel of arbitrators on December 7, 2007 is CONFIRMED for the reasons set forth in the preceding Memorandum Opinion.

BY THE COURT:


s/J. Curtis Joyner
J. CURTIS JOYNER,       J.